



RECEIVED
Mail Room

AUG 1 4 2013

United States Court of Appeals
District of Columbia Circuit

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. _____

IN RE: LARRY KLAYMAN,

*Petitioner*

**PETITION FOR WRIT OF MANDAMUS**

Larry Klayman, Esq.
DC Bar No.: 33458
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Petitioner in Pro Se

# **TABLE OF CONTENTS**

INTRODUCTION...........................................................................................1

RELIEF SOUGHT........................................................................................2

ISSUES PRESENTED ...............................................................................3

THE FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED BY
THE PETITION............................................................................................3

THE REASONS WHY THE WRIT SHOULD ISSUE...........................................3

CONCLUSION .........................................................................................18

i

# PETITION FOR WRIT OF MANDAMUS

Pursuant to 28 U.S.C. §1651, and D.C. Cir. R. 21, Petitioner Larry Klayman ("Petitioner") respectfully petitions for a writ of mandamus to compel Respondent the Honorable Colleen Kollar-Kotelly to recuse herself from the case of *Klayman v. Judicial Watch* (No. 06-cv-00670) and *Sataki v. Board of Governors*, et. al. (No. 10-0534), to vacate all her prior orders, and to compel Chief Judge David Sentelle, Judicial Council for the District of Columbia, and the Office of Circuit Executive to fully investigate Petitioner's ethics complaints against the Honorable Colleen Kollar-Kotelly.

## INTRODUCTION

In order to redress ethical violations and resulting constitutional deprivations, Petitioner has brought this action against the Honorable Colleen Kollar-Kotelly, Chief Judge David Sentelle, Judicial Council for the District of Columbia, and the Office of Circuit Executive. There has been egregious misconduct by Respondent Kotelly. Respondents Judicial Council and the Office of the Chief Executive have further persisted in covering up the egregious conduct of their fellow jurist.

Petitioner seeks to have a writ of mandamus issued to compel Respondent Kotelly to remove herself from the *Judicial Watch* and *Sataki* cases and to have her prior orders vacated. In addition, Petitioner seeks a writ of mandamus to compel

1

an actual bona fide consideration of his Ethics Complaint and Petition for Review,
as serious damage has been done to him by this continuing misconduct and to have
Respondent Kotelly severely reprimanded for her continuous and repeated
mistreatment of Petitioner.

## **RELIEF SOUGHT**

1.  Petitioner seeks, pursuant to the issuance of a writ of mandamus, to have
    Respondent Kotelly compelled to remove herself and vacate all prior orders
    from the ongoing *Judicial Watch* and prior *Sataki* case, by doing her duty
    under 28 U.S.C. §144, which by law she must.

2.  Petitioner also seeks a writ of mandamus compelling the Judicial Council
    and the Office of the Circuit Executive to perform meaningful reviews of the
    Ethics Complaint and Petition for Review filed by Petitioner against
    Respondent Kotelly and to severely reprimand her for her misconduct
    against Petitioner.

3.  In addition, Petitioner also seeks to have this case transferred to the U.S.
    Court of Appeals for the Third Circuit, as the D.C. Circuit has an inherent
    conflict of interest in hearing a case about fellow judges of the same district
    and circuit.

4. Petitioner also prays for such other relief as this Court may deem just and proper.

## ISSUES PRESENTED

1. This writ of mandamus deals with the issue of judicial bias and prejudice and the refusal of a District Court judge to recuse herself as mandated by the strict language of 28 U.S.C. §144.

2. In addition, it deals with the failure of the Judicial Council and the Office of the Circuit Executive to perform a bona fide review of the ethics complaints filed by Petitioner.

## STATEMENT OF FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED BY THE PETITION

Petitioner Larry Klayman is a trial lawyer and member in good standing of the District of Columbia bar for nearly 33 years. At issue here is judicial misconduct in two separate lawsuits in which Petitioner was appearing before Respondent Colleen Kollar-Kotelly.

Petitioner Klayman was involved in a breach of a severance agreement case against his former employer, Judicial Watch, a group that he had founded. *Klayman v. Judicial Watch*, et. al., Civil Action Number 06-cv-00670, was assigned to Respondent Kotelly. Respondent Kotelly had been appointed to the bench by President Clinton, and her husband, an attorney, had defended secret

3

service agents with information involving President Clinton's impeachment. Petitioner had previously sued President Clinton many times and was instrumental in uncovering the famous Chinagate finance scandal involving the Clintons. He had also represented nearly all the women who claimed to have been sexually harassed and sexually abused by President Clinton.

Petitioner left Judicial Watch, as stated on the face of the severance agreement, in a manner that "shall be treated for all purposes as a voluntary resignation," to "pursue other endeavors" including running for the U.S. Senate in Florida. Petitioner was praised in the Severance Agreement and was even paid a considerable sum "in recognition of Klayman's leadership and contribution to the founding and development of Judicial Watch." While the reason for Petitioner's departure from Judicial Watch was set forth on the face of the Severance Agreement, and therefore not at issue, Judicial Watch attempted to publicly smear Petitioner by accusing him of infidelity, to his divorced ex-wife -- who not coincidentally had been compelled to retract the false allegations in a court-sealed confidential divorce decree.

Judicial Watch injected these false allegations of marital infidelity into the Severance Agreement litigation before Respondent Kotelly in a failed attempt to gain leverage and to harm Klayman reputation. Not only was the information sought not relevant, any information discovered would have been barred by the

4

Parol Evidence Rule[1]. There was no reason for the discovery, nor could any of the information discovered be admissible into evidence.

Petitioner requested a protective order to prevent disclosure of personal and business proprietary information, but this request was similarly denied without reason by Respondent Kotelly. When Respondent Kotelly ordered the release of this information Petitioner objected.  Respondent Kotelly's response to this was to dismiss a great deal of Petitioner's case and banning him from presenting evidence on damages and later presenting witnesses for either his case in chief, or in his defense of the counterclaims by Judicial Watch.

Petitioner and his reputation were severely harmed by the release of information.  These false accusations predictably made their way to trade magazines such as "Legal Times," harming Petitioner and his professional standing in the community. Even more troubling was the damage done not only to Petitioner's children and family, but also to the innocent woman and her children who were made a part of the smear campaign. The actions taken against Petitioner were outrageous and were aimed solely for the purpose of destroying Petitioner.

---

[1] *See generally Giotis v. Lampkin*, 145 A.2d 779, 781 (D.C. 1958) (holding that "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as inoperative parol evidence of the prior negotiations and oral agreements.")

Respondent Kotelly had facilitated these acts and was complicit in the collective character assassination against Petitioner.

The second case involved Elham Sataki, a Persian television broadcaster for Voice of America ("VOA"). After having been harassed and retaliated against in the workplace, Ms. Sataki took a short leave form the VOA offices in the District of Columbia to visit her family and friends in Los Angeles ( "L.A."). While in L.A., Ms. Sataki had a severe nervous breakdown as a result of the continuing retaliation by VOA management, which had sent her provocative and threatening emails while on leave, Ms. Sataki had to seek urgent medical care in L.A.

Thereafter, Petitioner filed suit on behalf of Ms. Sataki (*Sataki v. Broadcasting Board of Governors*, et. al., Civil Action No. 10-0534 (D.D.C.)) in an attempt to address the harm that had been caused to her and allow her to rehabilitate in LA, her native home and where her treating physicians were located. The case was also assigned to Respondent Kotelly.

Petitioner sought, as provided for by law (*See Wagner v. Taylor*, 836 F.2d 566 (holding that a Petitioner is entitled to interim injunctive relief during the pendency of an administrative proceeding to preserve the status quo, to keep the aggrieved employee whole.)), a temporary restraining order ("TRO") requesting that Ms. Sataki be detailed to the L.A. office of VOA so that she could continue to seek for treatment in L.A. without losing her job. Respondent Kotelly denied the

TRO and subsequent preliminary injunction allowing Ms. Sataki to be detailed at the VOA L.A. office during her period of rehabilitation.  Ms. Sataki effectively lost her job and continued to suffer from the emotional trauma of having been sexually harassed and retaliated against in the workplace. This proposed solution -- to allow Ms. Sataki to be detailed out of D.C. to L.A. -- was also extremely accommodating to VOA, as it is usually the harasser who is removed from the workplace, not the victim, as an Office of Civil Rights investigation, which Ms. Sataki had instituted, proceeds.

The denial of this TRO and preliminary injunction was done after Respondent Kotelly refused to allow Ms. Sataki to even take discovery and/or have a hearing, and after Respondent Kotelly had summarily accepted the government's affidavits while summarily rejecting Ms. Sataki's. Petitioner moved for reconsideration and set forth all the errors, only to have Respondent Kotelly deny the motion without even considering them. The sheer number of errors was so numerous that they clearly could not have been unintentional[2], but done simply to harm Petitioner and Ms. Sataki, now a victim of Respondent Kotelly's animus toward her counsel.

---

[2] *See* Cynthia Gray, The Line Between Legal Error and Judicial Misconduct: Balancing Judicial Independence and Accountability, 32 Hofstra L. Rev. 1245 (2004).

An experienced jurist like Respondent Kotelly not granting discovery and then not ultimately ruling that Ms. Sataki could work at the VOA in LA, underscores the extreme prejudice involved here. An unbiased jurist would have erred on the side of maintaining the status quo and not letting Ms. Sataki fall into emotional, physical, psychological, and financial ruin, prolonging what her doctors diagnosed as a Major Depressive Disorder that could lead to suicide. All pleadings were made part of record in the eventual Ethics complaint, which Petitioner was forced to file.

Petitioner filed a Motion to Disqualify Respondent Kotelly, along with an affidavit setting forth in excruciating detail 15 pages of legal and factual errors, the same facts herein described. This was done in full compliance with 28 U.S.C. §144. Respondent Kotelly, as required under section 144, was to accept the allegations on the affidavit as true, and was to "proceed no further within." 28 U.S.C. §144. Instead of disqualifying herself, as required by law, Respondent Kotelly defiantly denied the motion and went forward with the proceedings.

With Respondent Kotelly's stark refusal to disqualify herself as required by law, Petitioner filed an ethics complaint against Respondent Kotelly before the Judicial Council of the District of Columbia Circuit ("Ethics Complaint"). The Ethics Complaint, then in front of Respondent Sentelle, was summarily dismissed on June 6, 2011. Respondent Sentelle ignored key portions of the Ethics Complaint

8

and did not even discuss or consider them, including making no mention of the *Judicial Watch* case. It was clear that Respondent Sentelle's concern was not with protecting the integrity of the court, but rather in protecting Respondent Kotelly and covering up the actions of his fellow jurist.

Respondent Sentelle's cursory dismissal of Petitioner's Ethics Complaint caused Petitioner to file a Petition for Review before the Office of the Circuit Executive, setting forth the refusal of Respondent Sentelle to consider the Ethics Complaint. Nine judges sit on the Review Panel, including Respondent Sentelle himself. Petitioner set forth a voluminous record citing all the claims leading forth to this petition. Yet despite this abundant record, and the time needed for it to circulate and be reviewed by the nine judges on the Review Panel, the petition was once again summarily dismissed in the "record time" of five days. Such a review, on the merits of the abundant record, simply could not have taken place in five days.  Petitioner then asked for a bona fide review, and Respondent Office of the Circuit Executive refused.

After having now pursued every means of a just resolution, Petitioner was left with all his options exhausted.  Ms. Sataki, as a result of the actions of Respondent Kotelly, could no longer pursue her claims against Voice of America. She was physically, emotionally, and financially ruined, and has since filed for and been granted bankruptcy, unable to afford a costly appeal in the courts. Petitioner

could not pursue a claim in the place of Ms. Sataki. The damage done to her is not a matter for appeal. Respondent Kotelly's actions were all done improperly and unethically under the color and authority of her abused "judicial power."

Petitioner's *Judicial Watch* action is still pending before Respondent Kotelly and the damage Respondent Kotelly has incurred upon Petitioner is irreversible. His reputation, legal practice, and relationship with his family have all been forever tarnished and damaged by the false claims that Respondent Kotelly allowed brought and broadcast into the public courtroom and domain. So too were innocent third parties, like the woman, her husband, and her children damaged. Respondents have collectively violated Petitioner's constitutional rights of due process and equal protection, among other constitutional claims, and are attempting to hide behind the robe of judicial power in order to avoid the repercussions.

On October 5, 2011, Petitioner filed suit against the Respondents in *Klayman v. Kotelly, et. al.*, filed in the U.S. District Court for the District of Columbia. *Klayman v. Kotelly*, No. 1:11-cv-01775 (D.D.C.). On December 5, 2011, Respondents filed a Motion to Dismiss, which was fully opposed by Petitioner. The District Court granted Respondents' Motion to Dismiss.

On October 25, 2012, Petitioner took an appeal of the District Court's decision to the U.S. Court of Appeals for the D.C. Circuit (*Klayman v. Kotelly*, No.

10

13-7017). This appeal was summarily dismissed by the D.C. Circuit on May 20,

2013. Petitioner then filed a petition for rehearing and rehearing en banc. On

August 12, 2013, the petition for rehearing and rehearing en banc was denied.

## STATEMENT OF THE REASONS WHY THE WRIT SHOULD ISSUE

### Jurisdiction is Proper Under the All Writs Act., 28 U.S.C. § 1651.

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651. The

All Writs Act is invoked by federal courts of appeals to a district judge, or by the

Supreme Court to issue a writ to a lower court judge. *Allied Chemical Corp. v.*

*Daiflon, Inc.*, 449 U.S. 33 (1980).

The All Writs Act states:

> The Supreme Court and all courts established by Act of Congress may
> issue all writs necessary and appropriate in aid of their respective
> jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651. "The authority of federal courts to issue writs of mandamus is

derived from the All Writs Act, 28 U.S.C. § 1651.*" United States v. Bell*, 2008

U.S. Dist. LEXIS 91803, 7-8 (E.D. Tenn. Sept. 29, 2008) *citing In re Parker*, 49

F.3d 204, 206 (6th Cir. 1995). Mandamus is defined as "[a] writ issued by a

superior court to compel a lower court or a government officer to perform

mandatory or purely ministerial duties correctly." *Coles v. Granville*, 448 F.3d 853,

861 n. 2 (6th Cir. 2006) (citing Black's Law Dictionary p. 973 (7th ed. 1999).

11

Mandamus is a drastic remedy, to be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62, 98 S. Ct. 2552, 57 L. Ed. 2d 504 (1978); *Kerr v. United States District Court*, 426 U.S. 394, 402-03, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976).

The case at hand is precisely one of those "extraordinary situations" that the court in *Will* described. Petitioner has been subject to repeated violations of his constitutional rights and every ethics complaint Petitioner has filed has fallen on deaf ears. It was mandatory that Respondent Kotelly remove herself from the proceedings, yet she defiantly refused to do so. Respondents Judicial Council and Office of the Chief Executive repeatedly ignored or summarily dismissed claims by Petitioner, refusing to perform a good faith investigation into Petitioner's complaints.

**Petitioner Has A Clear Right To Have His Claim Heard.**

Respondent Kotelly has clearly and repeatedly violated Petitioner's rights by refusing to recuse herself from the *Judicial Watch* and *Sataki* cases. Instead, Respondent Kotelly has utilized the court system as a means of punishing Petitioner for his political advocacy. This was done in clear violation of Petitioner's rights of due process and equal protection.

In addition, despite Petitioner's constitutional right to privacy, Respondent Kotelly ordered irrelevant discovery into private and intimate aspects of Petitioner's marital life, in a case that involved a mere employment severance agreement, with a clear cut provision that barred that discovery. This violation of Petitioner's right of privacy also sought to silence and punish Petitioner for his political actions and caused severe irreparable harm to Petitioner, whose standing in the legal profession, as well as in the community, suffered.

## Respondent Kotelly Unlawfully Refused To Remove Herself From The Proceedings.

"In order to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case, judges must adhere to high standards of conduct." *York v. United States*, 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. . . ." ABA Code Of Judicial Conduct Canon 3(C)(1) *see also Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) (en banc).

For a United States judge, recusal and/or disqualification are mandated by statute.

28 USC § 144 makes clear:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The language of the statute does not leave any room for discretion. The judge "*shall* proceed no further therein." If an affidavit meets the rule's standards, the judge *has a duty* to recuse himself. *Morse v. Lewis*, 54 F.2d 1027, 1031 (4th Cir.), cert. denied, 286 U.S. 557, 76 L. Ed. 1291, 52 S. Ct. 640 (1932) (emphasis added).

Petitioner, with well-documented showings of judicial bias by Respondent Kotelly, filed a timely affidavit in an attempt to have Respondent Kotelly remove herself from the proceedings, as provided by 28 USC §144.

Courts have also held that a jurist is subject to disqualification when extra-judicial bias toward the client's attorney becomes manifest. *Souder v. Owens-Corning Fiberglas Corp*. 939 F. 2d 647, 653 (8th Cir. 1991) ("bias against an attorney can reasonably be imputed to a party"). 939 F. 2d at 653; *United States v. Sykes*, 7 F. 3d 1331 (7th Cir. 1993). *See also United States v. Jacobs*, 855 F. 2d 652, 656 (9th Cir. 1988); *In re Beard*, 811 F. 2d 818, 830 (4th Cir. 1987); *United States v. Ritter*, 540 F. 2d 459, 462 (10th Cir. 1976); *Davis v. Board of Sch. Comm'rs*, 517 F. 2d 1044, 1050-51 (5th Cir. 1975).

Yet Respondent Kotelly ruled on her own ability to sit for those proceedings, and decided to unlawfully continue to hear the lawsuit. With abundant records demonstrating Respondent Kottelly's judicial bias, it is astounding that anyone would choose to remain as the judge for those cases. Not only did Respondent

14

Kotelly remain on the case, but inappropriately decided that she should remain on the case for herself. The decision to continue presiding over the *Sataki* case, along with any subsequent rulings made by Respondent Kotelly, were done in clear violation of the law and must be vacated.

Yet this judicial misconduct does not end with Respondent Kotelly. Petitioner filed an ethics complaint only to have it summarily dismissed. The same was true when Petitioner filed a Petition for Review in front of the Office of the Circuit Executive, only to have it summarily dismissed in a mere five days. It is impossible for nine justices to review and rule upon the extensive record created by Petitioner in the five days that Respondents allegedly did so. From the totality of the egregious conduct, it is clear that Respondents conspired to cover up the blatant misconduct of their fellow jurist, Respondent Kotelly. In the process, they deprived Petitioner of his right to fair judicial process, in violation of his constitutional rights. With no other recourse remaining, Petitioner has been forced to bring this action against Respondents.

**Petitioner Has No Further Remedies Available Under the Law.**

Petitioner followed the procedure for recusal and/or disqualification prescribed under 28 USC § 144 in both the *Judicial Watch* and the *Sataki* cases. Yet Respondent Kotelly refused to recuse herself from either of those proceedings and has instead remained on the bench. Petitioner has sought all available means

15

to redress her blatant refusal to follow the law, including filing a complaint with the Judicial Council and the Office of the Circuit Executive. Yet these complaints were summarily dismissed.

Petitioner next sought a writ of mandamus from another District Court of the same district compelling Respondent Kotelly to recuse herself from those cases. This case was also dismissed, and the appeal was summarily affirmed by the U.S. Court of Appeals for the D.C. Circuit, holding that the District Court did not have jurisdiction to issue a writ of mandamus over another District Court judge.

Petitioner is thus left with no other remedy available to him to compel Respondent Kotelly to follow the law other than to file this petition.

## All Prior Orders Must be Vacated.

When judicial misconduct is found, all prior orders must be vacated. *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001). In *Microsoft*, the U.S. Court of Appeals for the D.C. Circuit remanded the case to new District Court judge and vacated all prior orders because the sitting District Court judge had granted interviews in which he had spoken about the case.

## THE D.C. CIRCUIT IS INHERENTLY CONFLICTED AND THUS THE CASE SHOULD BE TRANSFERRED TO THE THIRD CIRCUIT.

Recusal is required when judicial conflicts create the appearance that the court's impartiality may be called into question, and "could suggest, to an outside

16

observer, such a 'high degree of favoritism or antagonism' to defendants' position

that 'fair judgment is impossible.' *Liteky v. United States*, 510 U.S. 540, 555, 127

L. Ed. 2d 474, 114 S. Ct. 1147 (1994). The courts strive to eliminate even the

appearance of bias. "Thus even if there is no bias in fact, an appearance of bias or

prejudice requires recusal if it is sufficient to raise a question in the mind of 'the

average citizen' about a judge's impartiality." *York v. United States,* 785 A.2d 651,

655 (D.C. 2001).

    Named as Respondents in this petition are judges of this very same circuit.

Because of this fact, this circuit is inherently conflicted and cannot hear this

petition.  At the very minimum, this case must be transferred to another of the U.S.

Court of Appeals. Transferring this case to the nearest adjacent circuit, the U.S.

Court of Appeals for the Third Circuit is required in order to remove any actual or

perceived conflicts that may result out of having a court hear cases involving

judges of the same district and circuit.


//

//

//


17

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the writs of mandamus be issued as prescribed above.

Respectfully submitted,

Larry Klayman
DC Bar No.: 33458
2020 Pennsylvania Avenue NW, Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2013, copies of the foregoing Petition for Writ of Mandamus were served by U.S. Mail, postage prepaid, upon the following:

Richard Wayne Driscoll
DRISCOLL & SELTZER, PLLC
300 N. Washington St.,
Suite 304 Alexandria, VA 22314

Hon. Colleen Kollar-Kotelly
U.S. District Court for the District of Columbia
E. Barrett Pettyman U.S. Courthouse
333 Constitution Ave., N.W.
Washington, D.C. 20001

Respectfully submitted,

Larry Klayman
DC Bar No.: 33458
2020 Pennsylvania Avenue NW, Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. _____

IN RE: LARRY KLAYMAN,

*Petitioner*

**ADDENDUM TO**

**PETITION FOR WRIT OF MANDAMUS**

Larry Klayman, Esq.
DC Bar No.: 33458
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Petitioner in Pro Se

# <u>ADENDUM</u>

## <u>TABLE OF CONTENTS</u>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.............2

CERTIFICATE AS TO DISCLOSURE STATEMENT...........................................3

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**In re: LARRY KLAYMAN,**

      Petitioner.

No. _____

---

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and *amici*:** this is an original action in mandamus. The parties at issue are the District Court, the Judicial Council, and the Office of the Circuit Executive.

There are no *amici*.

**B. Rulings under review:** Petitioner is challenging the refusal of the District Court judge to recuse herself as required under 28 U.S.C. §144.

**C. Related cases:** Petitioner is not aware of any related cases.

Respectfully submitted,

Larry Klayman
DC Bar No.: 33458
2020 Pennsylvania Avenue NW, Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

2

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

**In re: LARRY KLAYMAN,**

      Petitioner.

No. _____

## CERTIFICATE AS TO DISCLOSURE STATEMENT

Petitioner is an individual and, as such, is not required to file a Disclosure Statement pursuant to Rules 26.1(a) and 35(c).

Respectfully submitted,

Larry Klayman
DC Bar No.: 33458
2020 Pennsylvania Avenue NW, Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

3