CASE NO. 13-5258

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE: LARRY KLAYMAN

Petitioner.

---

PETITION FOR REHEARING AND REHEARING EN BANC

---

Larry Klayman, Esq.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Pro Se

## PETITIONER'S CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Petitioner Larry Klayman, appearing pro se, hereby certifies pursuant to Circuit Rule 28(a)(1) that:

A. Parties and Amici

The parties that appeared in the district court are Petitioner Larry Klayman, and Respondents the Honorable Colleen Kollar-Kotelly, the Honorable David Sentelle, the Judicial Council for the District of Columbia Circuit, and the Office of the Circuit Executive.

B. Rulings Under Review

The ruling under review is the denial of the Petition For Writ of Mandamus of this Court issued on October 22, 2013 by Senior Circuit Judges Edwards, Silberman, and Ginsburg.

C. Related Cases

Petitioner is not aware of any related cases.

## RULE 35(b)(1) STATEMENT

This proceeding involves one or more questions of exceptional importance including (1) the blatant misconduct and abuse of power by the federal judge which irreparably harmed Petitioner and left him with no recourse to address the harm since the ethics bodies within this district and circuit failed to police the unethical conduct by the judge and instead chose to protect their fellow jurist and themselves; and (2) the inherent conflict of interest that arises from having judges of the very same circuit decide the case.

## INTRODUCTION

For over three years, Petitioner Larry Klayman ("Petitioner") has pursued justice for the actions of a judge of the District Court for the District of Columbia, to no avail.  Petitioner is a trial lawyer and member in good standing of the District of Columbia bar for nearly 34 years. Petitioner has spent substantial time pursuing cases against former President Bill Clinton and Hillary Clinton, including uncovering campaign finance scandals against the Clintons and representing nearly all the women who claimed to have been sexually harassed by President Clinton. Respondent Colleen Kollar-Kotelly ("Kotelly") was appointed to the bench by President Clinton and her husband, an attorney, had defended secret service agents during President Clinton's impeachment. Thus, it is no surprise that Kotelly seized the opportunity to harm Petitioner during the course of two separate lawsuits involving Petitioner, by engaging in judicial misconduct, abusing her power, and blatantly violating established ethical standards.

The first lawsuit involved an action brought by Petitioner against his former employer, Judicial Watch, based on a breach of a severance agreement. As provided by the severance agreement, Petitioner left Judicial Watch in a manner that "shall be treated for all purposes as a voluntary resignation," to "pursue other endeavors." In fact, Petitioner was praised and paid a considerable sum in "recognition of [his] leadership and contribution to the founding and development

3

of Judicial Watch." Subsequently, in an effort to prevent Petitioner from returning to Judicial Watch, Judicial Watch initiated a public smear campaign against Petitioner by accusing him of infidelity with a married woman with children during his marriage to his ex-wife and falsely asserted that the infidelity was the reason Petitioner left Judicial Watch.

Given the private and confidential nature of his divorce proceeding, particularly since children were involved, Petitioner requested a protective order to prevent disclosure of personal and business proprietary information. Kotelly denied Petitioner's request without any reason and, instead, ordered the release of this information, as well as a deposition of Petitioner's ex-wife, which were not only irrelevant but was also barred by the Parol Evidence Rule. In addition, Kotelly unwarrantedly dismissed a great deal of Petitioner's case after precluding him from presenting crucial and convincing evidence. As a result of Kotelly's unwarranted fishing expedition into Petitioner's personal and private life, which was intended to publicly smear Petitioner, the release of this information also caused unnecessary and great harm to an innocent woman and her children, as well as Petitioner's own children and family, who were needlessly made part of the smear campaign.

The malicious and outrageous actions against Petitioner were intended for the sole purpose of destroying Petitioner while significantly tarnishing and damaging his credibility and reputation. Kotelly had facilitated, encouraged, and

perpetuated these acts and was complicit in the collective character assassination against Petitioner as a result of her own personal vendetta.

In a separate lawsuit assigned to Respondent Kotelly, Petitioner was representing Elham Sataki, a Persian television broadcaster for Voice of America ("VOA"), who had been subjected to incessant harassment and retaliation in the workplace. As a result of the unremitting abuse, Ms. Sataki took a short leave from the VOA offices in the District of Columbia to visit her family and friends in Los Angeles ("LA"). While on leave, VOA management continued to retaliate against Ms. Sataki through threatening, intimidating, and offensive emails, which ultimately caused Ms. Sataki to suffer a severe nervous breakdown forcing her to seek immediate urgent medical care.  Thereafter, Petitioner filed suit on behalf of Ms. Sataki (*Sataki v. Broadcasting Board of Governors*, et. al., Civil Action No. 10-0534 (D.D.C.))

As an initial matter, since Ms. Sataki required ongoing medical treatment, Petitioner sought a temporary restraining order ("TRO") requesting that Ms. Sataki be detailed to the LA office of VOA so that she could continue to seek treatment in LA without losing her job. Without any legal basis or reason, Kotelly denied the TRO and a subsequent preliminary injunction, directly causing Ms. Sataki to lose her job while continuing to suffer from the emotional trauma of having been sexually harassed and retaliated against in the workplace.

Kotelly not only denied this TRO and preliminary injunction, but also completely disregarded binding constitutional provisions by blatantly violating Ms. Sataki's due process rights throughout the case. Specifically, Kotelly, again unreasonably and without justification, refused to hold an evidentiary hearing, denied Ms. Sataki the ability to adequately conduct discovery through depositions and, instead, summarily accepted the government's affidavits while rejecting every affidavit submitted by Ms. Sataki. Petitioner moved for reconsideration setting forth in excruciating detail, fifteen pages of all the jurist's factual and legal errors, to no avail as Kotelly denied the motion without any consideration of the merits. The number and extent of errors was so numerous and significantly impacting that, clearly, they were not unintentional[1], but rather, calculated to harm Petitioner and, unfortunately, Ms. Sataki, an innocent victim of Kotelly's animus.

For an experienced jurist, like Kotelly, to refuse to hold an evidentiary hearing, deny a party's right to conduct discovery, and then prevent Ms. Sataki from working at the VOA offices in LA so she could obtain necessary medical treatment, underscores the extreme prejudice involved here. An unbiased jurist would have undoubtedly maintained the status quo in order to avoid the damaging consequences that resulted, causing Ms. Sataki to fall into emotional, physical,

---

[1] *See* Cynthia Gray, The Line Between Legal Error and Judicial Misconduct: Balancing Judicial Independence and Accountability, 32 Hofstra L. Rev. 1245 (2004).

psychological, and financial ruin, prolonging what her doctors diagnosed as a "Major Depressive Disorder" that can ultimately result in suicide.

Petitioner subsequently filed a Motion to Disqualify Kotelly, along with a fifteen-page affidavit setting forth, in excruciating detail, Kotelly's legal and factual errors and apparent bias and prejudice. Pursuant to 28 U.S.C. §144, Kotelly was required to accept the allegations on the affidavit as true, and was to "proceed no further within." 28 U.S.C. §144. Rather than disqualifying herself, however, Kotelly defiantly denied the motion, and unjustly and prejudicially proceed with the action.

In light of Kotelly's deliberate refusal to disqualify herself, Petitioner filed an Ethics Complaint with the Judicial Council of the District of Columbia Circuit ("Ethics Complaint"). On June 6, 2011, Respondent Honorable David B.Sentelle ("Sentelle") summarily dismissed the Ethics Complaint, ignoring significant sections while failing to consider and address crucial portions, including portions concerning the *Judicial Watch* case. Evidently, Sentelle was more concerned in protecting Kotelly and shielding the actions of his fellow jurist from legal scrutiny than preserving and protecting the integrity of the court.

Sentelle's cursory dismissal of Petitioner's Ethics Complaint, compelled Petitioner to file a Petition for Review before the Office of the Circuit Executive, setting forth, in detail, Sentelle's refusal to effectively consider the Ethics

Complaint, while providing a voluminous record which cited all the claims and circumstances leading to this petition. Despite the voluminous record and the requisite review by the nine judges on the Review Panel (which included Setnelle himself), the petition was summarily dismissed in the "record time" of five days. Clearly, a meaningful review of the merits of such an abundant record could not have taken place in such a short time among all these jurists. Consequently, the Respondent Office of the Circuit Executive refused Petitioner's request for a bona fide review.

Petitioner was left with no other avenue to redress the harm and seek a just resolution, as he had exhausted all possible options. Regrettably, because of Kotelly's misconduct, Ms. Sataki could no longer pursue her claims against VOA, leaving her physically, emotionally, and financially ruined. Unfortunately, Ms. Sataki has since filed for bankruptcy, unable to afford the exorbitant cost of an appeal. Interestingly, in denying the rights of victims, harming innocent people who were inadvertently caught in her onslaught leveled at Petitioner, Kotelly's improper and unethical actions were all implemented under the color and authority of her "judicial power."

Although the *Judicial Watch* action is still pending before Kotelly, the damage Kotelly has already caused Petitioner is irreversible. His reputation, legal practice, and relationship with his family have all been forever tarnished and

damaged by the false and vindictive claims that Kotelly unethically allowed into, and broadcasted in, a public judicial proceeding, without any legal basis to do so. Kotelly's conduct unnecessarily harmed innocent third parties who found themselves in Kotelly's path of destruction aimed at Petitioner, including injuring and harming an innocent woman and her children.

Respondents are now attempting to hide behind the robe of judicial power in order to avoid the repercussions. Petitioner sought a writ of mandamus in the U.S. Court of Appeals for the District of Columbia Circuit requesting: (1) Kotelly recuse herself from both the *Judicial Watch* and *Sataki* case; (2) all of Respondent's previous orders be vacated; (3) both cases be reassigned to an unbiased judge for new proceedings; and (4) a writ of mandamus compelling the Judicial Council and the Office of the Chief Executive to do their jobs in fully investigating Petitioner's claims against Kotelly. On October 22, 2013, this Court denied the Petition for Writ of Mandamus without explanation, and without giving Petitioner an opportunity to fully brief this Court and be heard, again denying Petitioner's basic constitutional rights.

## THE LAW

## THE D.C. FEDERAL COURTS ALL HAD A CONFLICT OF INTEREST AND IMPROPERLY IGNORED PETITIONER'S MOTION TO CHANGE VENUE

Under 28 U.S.C. §1404 (a) a district court may transfer any civil action to another district where it might have been brought, for the convenience of parties

and witnesses and in the interest of justice. *American Home Products Corp. v. Johnson & Johnson,* 668 F. Supp. 446, 448 (E.D.Pa. 1987). When reviewing a motion to transfer venue, a district court should consider private interests, including the convenience of the parties and of potential witnesses, and public interests, such as systemic integrity and fairness. *Copeland Corp. v. Choice Fabricators, Inc.,* 492 F.Supp. 2d 783, 789 (S.D. Ohio, 2005). Transferring venue is proper when there is evidence of bias in the community.  See *U.S. v. Washington*, 813 F.Supp. 269, 274 (D.Vt.1993).

Since the judges and ethics bodies are of the same district and the same circuit as this Court, any decision by this Court would create at least the appearance of impropriety, which would undermine the credibility of any judicial decision. Petitioner sought a change the venue in the district court, as transfer would clearly be proper under the circumstances of this case. However, before even considering or deciding whether a change of venue is proper, this case was unreasonably dismissed and then arbitrarily summarily affirmed. In fact, the district court judge and the colleague of the judges at issue, who reside in the same courthouse and frequently socialize and dine together, refused to consider the motion and instead conveniently dismissed Petitioner's complaint for mandamus relief injudiciously.

The issue of the Motion to Change Venue is still ripe for review on appeal. The district court judge had no legal basis to sit on this motion until the rest of the case was dismissed, only to deny it without an explanation "after the fact." Clearly, the district court judge held on to the case in order to subsequently dismiss it to protect the fellow judges of this court, disregarding the fact that such decisions inevitably undermine and diminish the integrity and veracity of the judicial system and those who are entrusted to ensure fairness and justice in judicial proceedings. Thus, to avoid actual bias and the appearance of such bias, this case should have been properly transferred to another venue from the start.

## JURISDICTION IS PROPER UNDER THE ALL WRITS ACT. 28 U.S.C. § 1651

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651. The All Writs Act is invoked by federal courts of appeals to a district judge, or by the Supreme Court to issue a writ to a lower court judge. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980).

The All Writs Act states:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651.  "The authority of federal courts to issue writs of mandamus is derived from the All Writs Act, 28 U.S.C. § 1651." *United States v. Bell*, 2008

U.S. Dist. LEXIS 91803, 7-8 (E.D. Tenn. Sept. 29, 2008) *citing In re Parker*, 49

F.3d 204, 206 (6th Cir. 1995). Mandamus is defined as "[a] writ issued by a

superior court to compel a lower court or a government officer to perform

mandatory or purely ministerial duties correctly." *Coles v. Granville*, 448 F.3d 853,

861 n. 2 (6th Cir. 2006) (citing Black's Law Dictionary p. 973 (7th ed. 1999).

Mandamus is to be invoked in extraordinary situations where the petitioner can

show a clear and indisputable right to the relief sought. *Will v. Calvert Fire Ins.*

*Co.*, 437 U.S. 655, 661-62, 98 S. Ct. 2552, 57 L. Ed. 2d 504 (1978); *Kerr v. United*

*States District Court*, 426 U.S. 394, 402-03, 96 S. Ct. 2119, 48 L. Ed. 2d 725

(1976).

     The case at hand is precisely one of those "extraordinary situations" that the

court in *Will* described.  Petitioner has been subject to repeated violations of his

constitutional rights and every ethics complaint Petitioner has filed has fallen on

deaf ears. It was mandatory that Respondent Kotelly remove herself from the

proceedings, yet she defiantly refused to do so.  Respondents Judicial Council and

Office of the Chief Executive repeatedly ignored or summarily dismissed claims

by Petitioner, refusing to perform a good faith investigation into Petitioner's

complaints.

     Despite the clear jurisdiction and responsibility of the D.C. Circuit to

oversee and ensure that the law is properly followed by the District Court, this

Court denied Petitioner's writ without any sort of explanation.  As shown below,

the District Court acted in disregard for the law and refused to recuse itself.  This

disregard for the law could not be any clearer, and it is the duty of this Court to see

to it that justice is finally served for the Petitioner.

<u>RESPONDENT KOTELLY FAILED TO FOLLOW THE LAW BY REFUSING<br>TO RECUSE HERSELF</u>

At issue here is the refusal of a district judge to recuse herself from a

proceeding after a party has properly filed an affidavit pursuant to 28 U.S.C. §144.

28 U.S.C. §144 provides in its entirety:

> "Whenever a party to any proceeding in a district court makes and files a
> timely and sufficient affidavit that the judge before whom the matter is
> pending has a personal bias or prejudice either against him or in favor of any
> adverse party, such judge shall proceed no further therein, but another judge
> shall be assigned to hear such proceeding.

> "The affidavit shall state the facts and the reasons for the belief that bias or
> prejudice exists, and shall be filed not less than ten days before the
> beginning of the term at which the proceeding is to be heard, or good cause
> shall be shown for failure to file it within such time. A party may file only
> one such affidavit in any case. It shall be accompanied by a certificate of
> counsel of record stating that it is made in good faith."

"The disqualification statute, 28 U.S.C. §144, is mandatory and automatic,

requiring only a timely and sufficient affidavit alleging personal bias or prejudice

of the judge. The judge is a silent defendant, unable to make findings on the truth

or falsity of the affiant's allegations, and truth must be presumed. *United States v.*

13

*Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965); and the allegations may be based upon information and belief, *Berger v. United States*, 255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920)." *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967).

Despite Kotelly's unprecedented number of factual and legal errors, Respondents characterize her actions simply as rulings not in Petitioner's favor. Never before has a judicial bias been clear and present as it has in this case. Kotelly had intentions to harm Petitioner's reputation, in both his personal and professional capacities, which is further evidenced by her absolute refusal to abide by the mandates of 28 U.S.C. §144 and her unwillingness to recuse herself, so that she can continue inflicting harm on Petitioner and his clients.

Petitioner simply sought, and continues to seek, recusal of Kotelly in the *Judicial Watch* and *Sataki* cases. Having no other alternatives, Petitioner Klayman filed suit in this Court in order to compel Respondent Kotelly to simply follow the law and to have a bona fide investigation done into her actions. There is no basis to deny Petitioner his day in court, particularly since there is no urgency to decide this matter without full briefing and oral argument.

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner respectfully petitions for rehearing and rehearing en banc. Such a rehearing is necessary to ensure fairness in all judicial

proceedings, particularly as Respondents' misconduct, abuse of power, and ethical

violations deprived Petitioner of vital constitutional rights, including his due

process rights and right to exercise free speech. To allow such blatant violations of

judicial standards and deprivations of basic fundamental rights without any

repercussions would jeopardize the integrity of the judicial system.


DATED: November 21, 2013

                        Respectfully Submitted,

                      /s/ *Larry Klayman*
                      Larry Klayman, Esq.
                      D.C. Bar No. 334581
                      2020 Pennsylvania Ave. NW #345
                      Washington, DC 20006
                      Tel: (310) 595-0800
                      Email: leklayman@gmail.com
                      *Pro se*

CERTIFICATE OF SERVICE


I HEREBY CERTIFY that on this 21st day of November, 2013 a true and correct
copy of the foregoing Petitioner's Petition for Rehearing and Rehearing En Banc
(Court of Appeals No. 13-5258) was submitted electronically to the Court of
Appeals for the District of Columbia Circuit and served via CM/ECF upon the
following:


Robert Craig Lawrence
U.S. Attorney's Office
Civil Division
555 Fourth Street, N.W.
E4214
Washington, D.C. 20530
(202) 514-7159
Email: craig.lawrence@usdoj.gov


Attorney for Respondents


                                    Respectfully submitted,

                                     /s/ *Larry Klayman*
                                    Larry Klayman, Esq.
                                    D.C. Bar No. 334581
                                    2020 Pennsylvania Ave. NW, Suite 345
                                    Washington, DC 20006
                                    Tel: (310) 595-0800
                                    Email: leklayman@gmail.com